```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA

                      Alexandria Division


SAMI GABER,                     )
                                )
     Plaintiff,                 )
                                )
          v.                    )   1:08cv76 (JCC)
                                )
SPECIAL AGENT                   )
KRISTIN HENDERSON, et al.,      )
                                )
     Defendants.                )
```

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants' Motion to Dismiss or for Summary Judgment. For the following reasons, the Court will grant Defendants' Motion to Dismiss and deny as moot Defendants' Motion for Summary Judgment.

### I. Background[1]

Plaintiff Sami Gaber ("Plaintiff") was previously employed by the United States Postal Service ("USPS") as a rural letter carrier assigned to the Fairfax Station Post Office. On October 11, 2005, while an employee of the USPS, Plaintiff allegedly suffered a workplace injury that left him disabled. As a result of the injury, Plaintiff was first awarded Continuation

---

[1] Though the Court will dismiss Plaintiff's Complaint for failure to state a claim and will not consider facts beyond those stated in the Complaint, the Court notes that Plaintiff does not dispute any of the facts put forth by Defendants as part of their Motion for Summary Judgment, and provides only a single disputed fact in its opposition.

1

of Pay and, once that expired, workers' compensation benefits on the daily rolls.  According to his Complaint, on November 3, 2005, Dee Rodgers, an Injury Compensation Specialist with the USPS, submitted false information concerning Plaintiff in a claim fraud report.  This information, allegedly provided at the behest of Defendant Michael Kearney ("Kearney"), the Station Manager for the Fairfax Station Post Office, implied that Plaintiff had filed and was filing false claims.

As a consequence of the report, during the months of November and December 2005 Defendant Special Agent Kristin Henderson ("SA Henderson") conducted surveillance of Plaintiff and his residence.  In addition, SA Henderson and Defendant Special Agent Michael Spolidoro ("SA Spolidoro") conducted an undercover operation that utilized hidden video and audio equipment to determine whether Plaintiff had engaged in illegal activity.[2]

On January 25, 2008, Plaintiff filed a Complaint against Kearney, SA Henderson, SA Spolidoro, and John E. Potter, the U.S. Postmaster General[3] (collectively, "Defendants"), seeking damages for the violation of his Fourth Amendment rights.

---

[2] This investigative activity led to the prosecution of Plaintiff for false statements or fraud to obtain federal employees' compensation in violation of 18 U.S.C. § 1920.  On October 4, 2006, after a two-day bench trial, Plaintiff was acquitted of all charges by United States District Judge T.S. Ellis, III.

[3] On May 15, 2008, Plaintiff voluntarily dismissed his claims against John E. Potter.

On March 31, 2008, Defendants filed the instant Motion to Dismiss or for Summary Judgment.  This matter is currently before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991)(citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted."  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff."  *Id.*  In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  However, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007)(citation omitted).

### III. Analysis

Plaintiff brings his action for damages under the principle announced by the Supreme Court in *Bivens v. Six Unknown Agents of the Bureau of Narcotics and Dangerous Drugs*, 403 U.S. 388 (1971). In their Motion to Dismiss or for Summary Judgment, Defendants argue that they are shielded by the doctrine of qualified immunity.[4] The Court will first address the interplay between *Bivens* actions and qualified immunity before turning to Defendants' arguments for dismissal. Because the Court finds that Plaintiff has failed to state a claim against either Kearney, SA Henderson, or SA Spolidoro, the Court need not address Defendants' Motion for Summary Judgment.

#### A. *Bivens* Actions and Qualified Immunity

In *Bivens*, the Supreme Court recognized a cause of action for damages against an individual acting under the color of federal law based on an alleged Constitutional violation. 403 U.S. at 390-97. *Bivens* actions are brought against federal employees in their individual capacity, and thus seek damages from the personal resources of those employees named as defendants. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

---

[4] Defendants also contend that Plaintiff's failure to serve each Defendant individually stripped the Court of personal jurisdiction. However, because Defendants have since waived individual service of process, the Court need not address this issue and will turn to the merits of Plaintiff's claims.

4

Recognizing the social costs of holding federal officers individually liable, the Supreme Court developed the doctrine of qualified immunity, which shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a right to be "clearly established," its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001)("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

Because qualified immunity is "an *immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), the issue of whether qualified immunity applies should be made "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). The Supreme Court has established a framework for resolving assertions of qualified immunity. *See Saucier* 533 U.S. at 201. First, a court must consider whether the facts alleged show that the officer's conduct violated a constitutional right. *Id.* If the allegations construed in the light most favorable to the

5

injured party make out a violation, "the next, sequential step is to ask whether the right was clearly established." *Id.* However, if no constitutional right would have been violated were the allegations established, "there is no necessity for further inquires concerning qualified immunity."[5] *Id.* The Court will now apply the *Saucier* framework to Plaintiff's claims.

### B. Claim Against Defendant Kearney

In his Complaint, Plaintiff alleges that "[o]n November 3, 2005, at the intentional malicious, wrongful and knowingly false request of Defendant Michael Kearney, Dee Rodgers, Injury Compensation Specialist, submitted information recorded on [a] Claim Fraud Report concerning the Plaintiff [that] was false." Pl.'s Compl. ¶ 7. The allegedly false portions of the claim fraud report were a notation stating that Plaintiff exceeded his physical limitation and a comment noting that he "has had several other claim[s] where he has missed time from work." *Id.*

Even accepting the truth of these allegations, Plaintiff has not pled a violation of a clearly established right. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

---

[5] Some courts that have resolved cases on the first *Saucier* question have found that the absence of a constitutional violation entitles a defendant to qualified immunity. *Henry v. Purnell*, 501 F.3d 374, 378 n.3 (4th Cir. 2007). In several recent opinions, however, the Supreme Court appears to have segregated the question of whether a constitutional violation occurred from the question of whether a defendant is entitled to qualified immunity. *See id.* (citing cases).

violated . . . ." U.S. Const. amend. IV. The protections of the Fourth Amendment are only implicated if there is a "search" or a "seizure." *United States v. McCoy*, 513 F.3d 405, 411 (4th Cir. 2008). "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Breza*, 308 F.3d 430, 433 (4th Cir. 2002)(quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). A "seizure" occurs "when there is a governmental termination of freedom *through means intentionally applied*." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989).

Here, Plaintiff cites no authority, and the Court can unearth none, that suggests that Kearney's alleged actions constituted a "search" or a "seizure." It is unquestionably the case that the Fourth Amendment is violated when "a police officer deliberately, or with reckless disregard for the truth, . . . make[s] material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause." *Miller v. Prince George's County, MD*, 475 F.3d 621, 632 (4th Cir. 2007); *see also Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir. 1996). This case, however, does not involve statements made by a law enforcement officer to a magistrate judge in an effort to secure a warrant. The Court cannot see how statements – even knowingly false ones – made to a body authorized to initiate an investigation is an action that infringes a reasonable expectation of privacy. Nor can the Court see how Kearney's

7

actions restricted Plaintiff's freedom of movement. Consequently, the Court finds that Plaintiff has failed to allege a constitutional violation and therefore is unable to survive the first step of the *Saucier* framework.

Even were the Court to find that a Fourth Amendment violation occurred, there is no authority to support a finding that the right is clearly established in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. As the Fourth Circuit has held, qualified immunity "protects law enforcement officers from 'bad guesses in gray areas' and ensures that they are liable only 'for transgressing bright lines.'" *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998), *aff'd*, 526 U.S. 603 (1999)(quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). The sheer absence of any authority supporting the alleged constitutional right indicates that Plaintiff's allegations detail, at best, gray areas. Thus, the Court will dismiss the claim against Defendant Michael Kearney.

### C. Claims Against Defendants SA Henderson and SA Spolidoro

Plaintiff alleges that SA Henderson surveilled Plaintiff and Plaintiff's residence on several occasions, without lawful authorization or a valid warrant, in violation of the Fourth Amendment. Pl.'s Compl. ¶ 8. It is well-established that "what a person knowingly exposes to the public, even in his own home . . ., is not a subject of Fourth Amendment protection."

*United States v. Taylor*, 90 F.3d 903, 908 (4th Cir. 1996) (internal citations and quotation marks omitted).  Thus, when a federal agent makes "observations from a public vantage point where has a right to be and from which the activities or objects he observes are clearly visible, [his observations] do not constitute a search within the meaning of the Fourth Amendment." *Id.* (internal citations and quotation marks omitted).  While Plaintiff makes the conclusory allegation that SA Henderson's surveillance violated his Fourth Amendment rights, he pleads no facts to support that contention.  The allegation that SA Henderson surveilled Plaintiff and his residence does not, by itself, indicate that there was even a search that would implicate Fourth Amendment protections, much less a violation of a clearly established right.  Without more, even applying Rule 8's liberal pleading standards, Plaintiff's claim cannot survive.

Moreover, the fact that the surveillance was conducted without a warrant does not save Plaintiff's claim.  The warrant requirement is only implicated where there is a "search" or "seizure" within the meaning of the Fourth Amendment. *See, e.g., Wyman v. James*, 400 U.S. 309, 316-18 (1971)(noting that while a warrantless search of private property is typically unreasonable, that "natural and quite proper protective attitude" is not a factor where there is no "search . . . in the Fourth Amendment meaning of that term").  Thus, because Plaintiff does not sufficiently plead that a "search" in fact occurred, the absence

9

of a warrant is irrelevant.  The Court therefore finds that Plaintiff has failed to state a Fourth Amendment claim against SA Henderson for surveilling Plaintiff and his residence.

The Complaint also states that SA Henderson and SA Spolidoro conducted an undercover operation involving video and surveillance of the Plaintiff in situations where he had a reasonable expectation of privacy, without lawful authorization or a valid warrant, in violation of Plaintiff's Fourth Amendment rights.  Pl.'s Compl. ¶ 9.  The law clearly provides that electronic recording by an undercover agent, even in a place where an individual ordinarily has a reasonable expectation of privacy, is not a search within the meaning of the Fourth Amendment.  *See, e.g., United States v. Hoffa*, 385 U.S. 293, 301-03 (1966)(finding that an individual has no reasonable expectation of privacy in statements made or conduct performed in the presence of an undercover agent or confidential informant, even in a place where one ordinarily has a reasonable expectation of privacy); *United States v. White*, 401 U.S. 745, 751 (1971)(holding that the Fourth Amendment is not violated when an undercover agent electronically records conversations with an individual when invited into a place in which that individual ordinarily has a reasonable expectation of privacy); *United States v. Davis*, 326 F.3d 361, 366 (2d Cir. 2003)(finding that videorecording by an undercover agent is likewise permissible under the Fourth Amendment); *United States v. Brathwaite*, 458

F.3d 376, 380-81 (5th Cir. 2006)(same).  Given this substantial precedent, Plaintiff's conclusory assertion that he was filmed during undercover operations in a situation in which an individual otherwise has a reasonable expectation of privacy is insufficient to support a Fourth Amendment claim.  Furthermore, as the Court explained above, the fact that this video surveillance occurred without a valid warrant is irrelevant because Plaintiff has failed to sufficiently plead that a search even took place.  Thus, the Court will dismiss the claims against Defendants SA Henderson and SA Spolidoro.

### IV.  Conclusion

For these reasons, the Court will grant Defendants' Motion to Dismiss and deny as moot Defendants' Motion for Summary Judgment.

An appropriate Order will issue.


June 2, 2008                         _____/s/_____
Alexandria, Virginia                       James C. Cacheris
                                    UNITED STATES DISTRICT COURT JUDGE